IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL CRUMBLE, | : | |
|     Plaintiff | : | No. 1:24-cv-01310 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
|     Defendants | : | |

### MEMORANDUM

Currently before the Court are the application for leave to proceed in forma pauperis ("IFP Application") and complaint filed by pro se Plaintiff Michael Crumble ("Crumble") in which he asserts claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 ("FTCA"). For the reasons stated below, the Court will grant the IFP Application, dismiss Crumble's Bivens claim with prejudice, and dismiss Crumble's FTCA claim without prejudice to him reasserting the claim through an amended complaint.

**I.      BACKGROUND**

Crumble, a convicted and sentenced federal prisoner, commenced this action by filing a complaint and handwritten application for leave to proceed in forma pauperis, both of which the Clerk of Court docketed on August 5, 2024. (Doc. Nos. 1, 2.) Because Crumble used a handwritten application, rather than the Court's standard form, when applying for leave to proceed in forma pauperis, an Administrative Order issued requiring him to either apply for leave to proceed in forma pauperis using the Court's standard form or remit the fee within thirty (30) days or risk dismissal of the case. (Doc. No. 3.) Crumble timely complied with the

Administrative Order by filing the IFP Application on September 4, 2024.[1] However, he did not accompany the IFP Application with a certified prisoner trust fund account statement as required by the in forma pauperis statute, see Section 1915(a)(2) ("A prisoner seeking to bring a civil action ... without prepayment of fees . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined."), another Administrative Order issued requiring the warden at Crumble's place of incarceration to submit Crumble's certified account statement with the Clerk of Court. (Doc. No. 7.) Crumble's certified account statement was docketed with the Clerk of Court on September 27, 2024. (Doc. No. 8.)

Crumble names the following Defendants in his complaint: (1) the United States of America ("Government") and (2) J. Berkihiser ("Berkihiser"), the Warden of Federal Correction Institution Schuylkill ("FCI Schuylkill"). (Doc. No. 1 at 1, 2.)[2] Crumble generally alleges that Defendants subjected him to unconstitutional conditions of confinement in violation of the

---

[1] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Unfortunately, when filing his IFP Application, Crumble did not include a declaration stating when he delivered the petition to prison authorities for mailing to the Clerk of Court. See (Doc. No. 6 at 1–4). Nonetheless, the envelope containing the petition is postmarked September 4, 2024. See (id. at 4). As such, the Court uses September 4, 2024, as the IFP Application's filing date even though the Clerk of Court did not docket it until September 9, 2025, which was after the deadline set forth in the Administrative Order and resulted in the issuance of a second Administrative Order. (Doc. No. 5); Cf. Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

[2] Crumble sues Berkihiser in his individual and official capacities. (Id. at 1.)

2

Eighth Amendment to the United States Constitution, as well as Pennsylvania state tort law, while he was incarcerated at FCI Schuylkill.  (Id. at 2.)

Crumble avers that a stabbing occurred in his housing unit at FCI Schuylkill, 4B, on Saturday, August 28, 2021.[3]  (Id. at 4.)  Crumble was informed that his housing unit would be on lockdown until "Wednesday" while the "S.S.I." investigated the incident.  See (id.).  However, when Wednesday arrived, Crumble's housing unit manager told him that "medical" directed that the housing unit would remain on lockdown/quarantine because three (3) new inmates arrived on the unit and were exposed to COVID-19.  See (id.).

Crumble disagrees with this decision, pointing out that the three (3) new inmates, who were previously vaccinated for COVID-19, arrived at FCI Schuylkill on Tuesday, September 7, 2021, and spent only approximately five (5) minutes in housing unit 4B, did not encounter any inmates on the unit, including Crumble, and were transported to housing unit 3B.[4]  (Id. at 3–4.)  Additionally, when he asked the unit manager "why do [sic] he had [sic] to quarantine 14 days if he's not exposed," the unit manager told him that it was "out of [his] hands."  See (id. at 4).

---

[3]  The Court takes judicial notice of the days of the week for dates referenced in Crumble's complaint.  See Plotner v. AT & T Corp., 224 F.3d 1161, 1167 n.1 (10th Cir. 2000) (explaining that a court can take judicial notice of calendar and days of week on which certain dates fall).

[4]  The dates of the events described in Crumble's complaint are unclear.  In parts of his complaint, Crumble alleges that he was subjected to unconstitutional conditions of confinement "for over 18-months [sic] between 2020 and 2022" and from "approximately August, [sic] 2020 through October, [sic] 2021," see (id. at 1, 2); yet, he describes events which occurred in only September 2021.  (Id. at 3–4.)  Moreover, Crumble alleges that the lockdown implemented on August 28, 2021 due to the stabbing was to last until "Wednesday," see (id. at 4), which would presumably be Wednesday, September 1, 2021.  However, by this date, the three (3) new inmates Crumble mentions in his complaint had not arrived at FCI Schuylkill and, as such, could not have been the reason for COVID-19 exposure on Crumble's housing unit causing the subsequent lockdown/quarantine.

Due to the medical lockdown, Crumble was allegedly: (1) unable to "shower or maintain proper hygiene," "purchase over-the-counter medication necessary to manage various ailments," and "communicate with family"; (2) forced to consume cold or expired food; and (3) obtain "clean laundry, bed line [sic], or cleaning supplies." See (id. at 1). He claims to have suffered "emotional, psychological, and medical injury [sic]" due to FCI Schuylkill officials' alleged conduct. See (id. at 2).

Based on these allegations, Crumble asserts (1) a claim under Bivens for violations of his Eighth Amendment rights relating to the conditions of his confinement and (2) state-law tort claims sounding in negligence, under the FTCA.[5] (Id. at 2–4.) For relief, Crumble seeks compensatory and punitive damages. (Id. at 4.)

## II.     LEGAL STANDARDS

### A.     Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." See id. This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that

---

[5] As discussed infra, Crumble avers that he filed an administrative remedy with Federal Bureau of Prisons ("BOP") on June 15, 2023, which was received on July 24, 2023, and then denied on January 31, 2024. (Id. at 3.)

4

> [they are] unable to pay the costs of the lawsuit. Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris v. Middletown Twp., 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished) (footnote omitted).

### B. The Court's Screening of Complaints Under 28 U.S.C. §§ 1915A and 1915(e)(2)

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint is frivolous or fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . is frivolous . . . [or] fails to state a claim on which relief may be granted . . . .").

A complaint is frivolous under Sections 1915A(b)(1) and 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact." See Neitzke, 490 U.S. at 325. In addition, when reviewing whether a plaintiff has failed to state a claim upon which relief may be granted under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when

reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening of a complaint under Sections 1915A and 1915(e)(2). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the court must "remain flexible, especially 'when

6

dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### III.   DISCUSSION

#### A.   The IFP Application

After reviewing the IFP Application and Crumble's certified prisoner trust fund account statement, it appears that he is unable to pre-pay the costs of this civil action. Therefore, the Court will grant the IFP Application and allow Crumble to proceed in forma pauperis in this case.[6]

#### B.   Screening of Crumble's Claims in His Complaint

##### 1.   Crumble's Eighth Amendment Bivens Claim Relating to the Conditions of His Confinement

Crumble asserts a Bivens claim in which he claims that Defendants violated his rights under the Eighth Amendment by subjecting him to cruel and unusual conditions of confinement. (Doc. No. 1 at 3–4.) The Court will dismiss this claim for the failure to state a cognizable claim for relief under Bivens because there is no Bivens remedy for a federal prisoner's Eighth Amendment claims based on alleged inhumane conditions of confinement.

---

[6] However, because Crumble is a prisoner, he is advised that he will be obligated to pay the filing fees for this case in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome. See 28 U.S.C. § 1915(b).

Bivens "provides for private rights of action against federal officials for certain constitutional violations." See Bryan v. United States, 913 F.3d 356, 358 n.1 (3d Cir. 2019); Murphy v. Bloom, 443 F. App'x 668, 669 n.1 (3d Cir. 2011) (unpublished) ("Bivens recognized a private cause of action to recover damages against federal actors for constitutional violations, similar to the cause of action against state actors provided by 42 U.S.C. § 1983."). The Third Circuit Court of Appeals has described Bivens and the relevant analysis for this Court to consider when evaluating the viability of a plaintiff's Bivens claim as follows:

> In certain circumstances, the Constitution affords a cause of action for damages against individual federal officers to redress violations of constitutional rights. Bivens, 403 U.S. at 397, 91 S.Ct. 1999. "In the case giving the doctrine its name, the Supreme Court held there is a cause of action for damages when a federal agent, acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment." [Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021)] (citing Bivens, 403 U.S. at 389, 397, 91 S.Ct. 1999). In the decade following Bivens, the Supreme Court recognized two additional causes of action under the Constitution: first, for a congressional staffer's gender discrimination claim under the Fifth Amendment, see Davis v. Passman, 442 U.S. 228, 244, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see [Carlson v. Green, 446 U.S. 14, 19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); Egbert v. Boule, 596 U.S. 482, 490–91, 142 S.Ct. 1793, 213 L.Ed.2d 54 (2022)].
>
> Since then, the Supreme Court has "consistently refused to extend Bivens liability to any new context or new category of defendants," Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), and "has not implied additional causes of action under the Constitution," Egbert, 596 U.S. at 491, 142 S.Ct. 1793. Instead, in recognition that separation of powers principles are central to the analysis, the Court has "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." [Ziglar v. Abbasi, 582 U.S. 120, 135, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017)] (quoting Iqbal, 556 U.S. at 675, 129 S.Ct. 1937). At bottom, the "question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" Id. (quoting Bush v. Lucas, 462 U.S. 367, 380, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)). "The answer most often will be Congress," id., as the "Judiciary's authority to do so at all is, at best, uncertain," Egbert, 596 U.S. at 491, 142 S.Ct. 1793. The Constitution entrusts the legislature—not the courts—with the power to fashion new causes of action. And "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation."

8

> Abbasi, 582 U.S. at 133, 137 S.Ct. 1843. Therefore, when considering whether to recognize a new implied cause of action for damages under a constitutional provision, "our watchword is caution." [Hernandez v. Mesa, 589 U.S. 93, 101, 140 S.Ct. 735, 206 L.Ed.2d 29 (2020)].
>
> Reflecting these concerns, the Supreme Court has set forth a two-step inquiry to determine the availability of Bivens remedies in a particular case. See Abbasi, 582 U.S. at 139–40, 137 S.Ct. 1843. First, we ask whether the "case presents a new Bivens context"—i.e., whether the "case is different in a meaningful way from previous Bivens cases decided by" the Supreme Court. Id. at 139, 137 S.Ct. 1843. Only three cases serve as a benchmark: Bivens, Davis, and Carlson. "And our understanding of a 'new context' is broad." Hernandez, 589 U.S. at 102, 140 S.Ct. 735.
>
> While the Court has not outlined "an exhaustive list of differences that are meaningful enough to make a given context a new one," factors to be considered include:
>
>> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.
>
> Abbasi, 582 U.S. at 139–40, 137 S.Ct. 1843. "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available." Shorter, 12 F.4th at 372.
>
> Alternatively, if the case presents a new context, we proceed to the second step of the inquiry and ask whether there are "special factors counselling hesitation" in extending Bivens. See Abbasi, 582 U.S. at 136, 137 S.Ct. 1843. The focus at this second step is "on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. At this stage, two factors are "particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018) (citing Abbasi, 582 U.S. at 136, 137 S.Ct. 1843). But any reason to pause is sufficient to forestall a Bivens extension. Hernandez, 589 U.S. at 102, 140 S.Ct. 735.

See Kalu v. Spaulding, 113 F.4th 311, 325–26 (3d Cir. 2024).

Here, and as stated above, Crumble alleges that he was subjected to unconstitutional conditions of confinement when his housing unit was placed on a fourteen (14)-day lockdown/quarantine because inmates who had been exposed to COVID-19 were on the housing unit. (Doc. No. 1 at 3–4.) These allegations fail to state a claim for relief under Bivens because it has not been extended to Eighth Amendment conditions-of-confinement claims. See Kalu, 113 F.4th at 337, 340 (determining that federal prisoner's Eighth Amendment "conditions-of-confinement claim fails because it presents a new Bivens context and special factors counsel against a Bivens extension," and holding that the claim "is ineligible for Bivens remedies").[7]

---

[7] In Kalu, the federal prisoner alleged that he was subjected to unconstitutional conditions of confinement when prison officials sanctioned him "to sleep on a cold steel metal bunk for six months in below freezing temperatures without access to heat or appropriate clothing." See 113 F.4th at 337 (citation and internal quotation marks omitted). In concluding that a Bivens remedy was unavailable for this claim, the Third Circuit explained that the claim "presents a new context because it is distinct 'in a meaningful way from previous Bivens cases decided by' the Supreme Court: Bivens, Davis, and Carlson." See id. (quoting Abbasi, 582 U.S. at 139); see also id. at 338 ("Unlike any previously recognized Bivens claim, one based on the conditions of a prison cell implicates policy and operational decisions of prison administrators that raises significant separation of powers concerns. We therefore hold that Kalu's Eighth Amendment conditions-of-confinement claim presents a novel Bivens context."). The Third Circuit also explained that special factors counseled against extending a Bivens remedy to the plaintiff's conditions-of-confinement claim because an alternative remedial scheme through the BOP's Administrative Remedy Program ("ARP") existed, Congress omitted a standalone damages action when it passed the PLRA, and extending a remedy would implicate separation of powers insofar as the BOP, and not the judiciary, is "tasked with oversight of prison administration." See id. at 338–40.

Crumble acknowledges in his complaint that he had access to and took advantage of the BOP's ARP. See (Doc. No. 1 at 3 (describing steps taken to exhaust his Bivens claim)). Therefore, like in Kalu, his conditions-of-confinement claim presents a new context for Bivens purposes. See Muniz v. United States, 149 F.4th 256, 264 (3d Cir. 2025) ("As this Court noted in Kalu, the BOP ARP creates a new context at step one of the Bivens inquiry . . . ." (citing Kalu, 113 F.4th at 327–28)). "In addition[,] . . . the BOP ARP 'foreclose[s] the need to fashion a new, judicially crafted cause of action' at the second step as well." Id. (quoting Kalu, 113 F.4th at 346).

10

Accordingly, the Court will dismiss Crumble's Bivens claim for the failure to state a claim under Section 1915(e)(2)(B)(ii).

### 2. Crumble's FTCA Claim

Crumble alleges that prison officials at FCI Schuylkill, including Berkihiser, were negligent when they quarantined him and his housing unit (apparently for fourteen (14) days because three (3) new inmates, who were only in his housing unit for approximately five (5) minutes, were exposed to COVID-19. (Doc. No. 1 at 3–4.) Based on his allegations, the Court construes Crumble's complaint as asserting FTCA claims for negligence and negligent infliction of emotional distress ("NIED") under Pennsylvania law. So construed, Crumble fails to state a plausible claim for relief. Therefore, the Court will dismiss his FTCA claims.[8]

---

[8] A plaintiff must comply with the FTCA's jurisdictional requirements, which are contained in 28 U.S.C. § 2675(a), before filing a FTCA claim in federal court. Section 2675(a) provides that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [their] claim shall have been finally denied by the agency." See 28 U.S.C. § 2675(a); see also Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015) ("No claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim."). Thus, "[t]he FTCA contains a jurisdictional bar that requires a plaintiff to file [their] claim with the appropriate federal agency and receive a final denial by that agency before filing a complaint in federal court." See Banks v. Roberts, 251 F. App'x 774, 776 (3d Cir. 2007) (unpublished) (emphasis added) (citing 28 U.S.C. § 2675(a)). A plaintiff's "[f]ail[ure] to follow this procedure deprives federal courts of subject matter jurisdiction." See Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011) (unpublished) (citing White-Squire v. USPS, 592 F.3d 453, 456–58 (3d Cir. 2010)). Furthermore, this exhaustion requirement cannot be waived. See Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) ("In light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, . . . the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." (citing Livera v. First Nat'l Bank of N.J., 879 F.2d 1186, 1194 (3d Cir. 1989))).

The plaintiff "must plead administrative exhaustion in an FTCA case." See Guilford v. FCI Williamsburg, No. 22-cv-01945, 2022 WL 2192945, at *2 (E.D. Pa. June 16, 2022) (omission omitted) (quoting Colbert v. U.S. Postal Serv., 831 F. Supp. 2d 240, 243 (D.D.C. 2011)). Here, Crumble properly alleges subject-matter jurisdiction under the FTCA insofar as he alleges that he presented his claims to the appropriate federal agency, the BOP, via an administrative

11

The FTCA is a limited waiver of sovereign immunity and authorizes suits against the United States:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

See 28 U.S.C. § 1346(b)(1). Essentially, the FTCA renders the United States "liable to the same extent as a private party for certain torts committed by federal employees acting within the scope of their employment." See United States v. Orleans, 425 U.S. 807, 813 (1976).

The FTCA "does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court." See In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001). "The FTCA only waives sovereign immunity for torts recognized under the law of the state in which the conduct was alleged to have occurred." Rinaldi v. United States, 904 F.3d 257, 272 n.15 (3d Cir. 2018); see also F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994) (explaining that the "law of the State" is "the source of substantive liability under the FTCA"). Here, because FCI Schuylkill is in the Commonwealth of Pennsylvania, Pennsylvania law applies to Crumble's FTCA claims for negligence and negligent infliction of emotional distress.

"Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 221 (Pa. 2018) (citation and internal quotation marks omitted). Under Pennsylvania

---

complaint filed on June 15, 2023, and received by the BOP on July 24, 2023. (Doc. No. 1 at 3.) He also alleges that the actions at issue occurred while he was incarcerated at FCI Schuylkill, and he names the Government as a Defendant. (Id. at 1, 3.) Accordingly, this Court has subject-matter jurisdiction over Crumble's FTCA claims.

law, a negligence claim "requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." See Pyeritz v. Commonwealth, 32 A.3d 687, 692 (Pa. 2011) (citation omitted).

Additionally, a NIED claim under Pennsylvania law is limited to the following four (4) theories of recovery:

> (1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty (the special relationship rule); (2) the plaintiff suffered a physical impact (the impact rule); (3) the plaintiff was in a zone of danger and reasonably experienced a fear of immediate physical injury (the zone of danger rule); or (4) the plaintiff observed a tortious injury to a close relative (the bystander rule).

See Jordan v. Pa. State Univ., 276 A.3d 751, 774 (Pa. Super. Ct. 2022) (citation and internal quotation marks omitted)); Toney v. Chester County Hosp., 961 A.2d 192, 197–98 (Pa. Super. Ct. 2008), aff'd, 36 A.3d 83 (Pa. 2011) (recognizing same four (4) elements (citation omitted)). However, "absent a finding of negligence, [a NIED] claim cannot survive." See Jordan, 276 A.3d at 774 (citation and internal quotation marks omitted). In other words, a plaintiff must establish a negligence claim in to prevail under any theory of a NIED claim. See id.

Here, although Crumble repeatedly references Defendants' alleged "negligence" and "negligent" conduct in his complaint, see (Doc. No. 1 at 1–4), these labels are legal conclusions that are insufficient to state a plausible negligence claim. See Iqbal, 556 U.S. at 678 (indicating that "labels and conclusions" and "unadorned, the defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a plausible claim for relief (citing Twombly, 550 U.S. at 555)). Instead, the issue as to whether Crumble states a plausible negligence claim depends on the sufficiency of his factual allegations and, when reviewing said allegations, Crumble fails to plausibly allege facts to satisfy the elements of a negligence claim.

13

As to the duty owed to Crumble by the FCI Schuylkill employees, the Court notes that "the duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule."[9]  See United States v. Muniz, 374 U.S. 150, 164–65 (1963); see also Christian v. United States, 136 F. App'x 514, 515 (3d Cir. 2005) (unpublished) ("[T]he [G]overnment's duty of care towards federal prisoners is governed by 18 U.S.C. § 4042." (citing Jones v. United States, 91 F.3d 623, 624 (3d Cir. 1996))); Jones, 91 F.3d at 624 (finding that duty applicable to federal prisoner's claim that federal employees failed to provide him with his medication despite knowing that it was needed for his health was "articulated in 18 U.S.C. § 4042(a)(2) and (3)").  Section 4042 provides in relevant part that the BOP "shall . . . (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons . . . convicted of offenses against the United States . . . [and] (3) provide for the protection . . . of all persons . . . convicted of offenses against the United States." See 18 U.S.C. § 4042(a)(2), (3).  "Courts have read [these statutory provisions] to mean that the government must exercise ordinary diligence to keep prisoners safe and free from harm." Christian, 136 F. App'x at 515 (citing Jones v. United States, 534 F.2d 53, 54 (5th Cir.), cert. denied, 429 U.S. 978 (1976)); see also Harris v. Fed. Bureau of Prisons, No. 16-cv-00049, 2019 WL 13552027, at *6 (W.D. Pa. Jan. 2, 2019) ("Independent of an inconsistent state rule, the government's duty of care to federal prisoners is one of ordinary diligence as defined by [Section] 4042."), aff'd, 779 F. App'x 72 (3d Cir. 2019) (unpublished); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987) ("[S]ection 4042 requires ordinary diligence to keep prisoners safe from harm." (citation omitted)).

---

[9] The Court could not locate any Pennsylvania law which is inconsistent with the duties imposed by Section 4042.  Therefore, Section 4042 applies in this case.

Presuming that Crumble invokes Section 4042 as the applicable duty owed to him by FCI Schuylkill officials, his allegations fall far short of plausibly showing that those officials breached that duty. Crumble alleges that FCI Schuylkill's medical department imposed a lockdown/quarantine due to three (3) new inmates being exposed to COVID-19, despite Crumble's belief that he was not threatened by the inmates' exposure because they had only been on his housing unit for approximately five (5) minutes and already received the COVID-19 vaccine. (Doc. No. 1 at 1, 3–4.) However, he does not allege that the new inmates did not contract COVID-19 or that they did not have contact with prison officials who also had been present on his housing unit and who could have spread it to other inmates or staff. Crumble also appears to believe that the inmates' vaccination status somehow precluded them from transmitting COVID-19 to others, but he includes no allegations of fact relating to his vaccination status, the vaccination status of the other inmates in his housing unit, the vaccine prevents transmission of COVID-19, or that such a limited exposure did not risk transmission of COVID-19. Moreover, Crumble's allegations do not plausibly show how the lockdown or quarantine was inconsistent with the prison's duty to protect and provide care for him and the other inmates on his housing unit. Although Crumble complains about an alleged lack of access to certain supplies and laundered items, the inability to shower and communicate with his family, and consuming cold or expired food, his allegations are wholly insufficient to demonstrate that he was not protected, provided with the basic necessities, or denied subsistence during the temporary fourteen (14)-day period described in his complaint. Instead, even after construing Crumble's allegations in the light most favorable to him, those allegations describe, at most, that he was inconvenienced during the temporary lockdown, and they amount to a mere disagreement with the medical department's decision about how to properly respond to COVID-19 exposures

at FCI Schuylkill. Accordingly, the Court will dismiss Crumble's FTCA negligence claim for the failure to state a claim under Section 1915(e)(2)(B).[10]

### C.    Leave to Amend

Having determined that Crumble's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Based on the analysis above, allowing Crumble leave to amend his Eighth Amendment Bivens claim would be futile. On the other hand, although the Court is skeptical of Crumble's ability to allege sufficient facts to assert a plausible FTCA negligence claim against the Government, the Court will provide him with an opportunity to amend this claim to make specific factual allegations about how prison officials breached their

---

[10] There is an additional flaw with Crumble's claim insofar as if the FCI Schuylkill medical department had not imposed a lockdown/quarantine due to the COVID-19 exposure and he caught COVID-19, he could then assert that prison officials were negligent in failing to impose a lockdown.

duty to him and how he was actually damaged (and not merely inconvenienced) by any breach, if he so chooses.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant the IFP Application and dismiss the complaint without prejudice to Crumble filing an amended complaint as to only his FTCA claim against the Government. An appropriate Order follows.[11]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[11] The Order will provide additional information to Crumble about the filing of an amended complaint.